IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

AIKEN DIVISION

| | |
|---|---|
| PAUL WESTON, M.D., ) | Civil Action No. 1:05-2518-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MARGARET J. WESTON MEDICAL CENTER ) | |
| AND MARGARET J. WESTON MEDICAL ) | |
| CENTER BOARD OF DIRECTORS (IN THEIR ) | |
| OFFICIAL CAPACITY), ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendants. ) | |
| ) | |

Plaintiff, Paul Weston ("Weston") filed this action on August 30, 2005. He alleges claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.[1] Defendants, Margaret J. Weston Medical Center (the "Center") and the Board of Directors of the Center, filed a motion to dismiss and/or for summary judgment on September 22, 2006. Weston filed a memorandum in opposition on October 10, 2006, and Defendants filed a reply on October 17, 2006.

FACTS IN THE LIGHT MOST FAVORABLE TO PLAINTIFF

1.  The Center, named after Weston's late wife, was started by her to provide healthcare to the underserved and un-served people in the Aiken County, South Carolina Area. See Transcript at 63 (Att. 13 to Plaintiff's Opp. Mem.).[2]

---

[1] Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

[2] "Transcript" refers to the transcript of a trial held October 10-12, 2005 in the Aiken County Court of Common Pleas (discussed further below).

2.       Weston was born in 1922. Complaint, Para. 24.

3.       Weston volunteered his time and money to the Center from the time of its inception until his late wife's death. During most of his tenure, his work was voluntary and he served in several positions including as Medical Director for the Center. Transcript at 63-64.

4.       In June 2002, the Center was having financial problems and was unable to collect Medicaid and insurance monies because it lacked certain doctor identification numbers. Transcript at 66.

5.       On June 24, 2002, the Center entered into a contract with Weston for Weston to come back to the Center and serve as Medical Director for a term of twenty-four months at a salary of $140,000 per year. Weston Dep. 7; Defendants' Ex. 2.[3]

6.       On July 24, 2002, the Center hired Odessa Chavous ("Chavous") as its Chief Executive Officer. See Weston Dep. 14.

7.       In a letter dated November 23, 2002, the Center's federal funding agent, the Department of Heath and Human Services, Health Resources and Services Administration, sent a letter to the Center stating that while Weston was well qualified in his field,[4] a person with a background in primary care was essential for the position of medical director. Defendants' Ex. 3.

---

[3] "Defendants' Ex. ___" refer to exhibits to Defendants' motion to dismiss or for summary judgment.

[4] Weston is a surgeon. See Weston Dep. 174.

8. Chavous, based on a belief that Weston lacked this qualification, sought to change Weston's title to Medical Director Emeritus and reduce his pay on January 24, 2003. She gave Weston a letter to that effect. Weston did not agree to the change. Weston Dep. 159.

9. In March 2003, Weston filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC"), alleging age discrimination. Defendants' Ex. 4.

10. A notice of termination was given to Weston on approximately August 7, 2003. Weston Dep. 79-82. The notice of termination provided, in pertinent part:

> This letter is formal notice that your employment with the Margaret J. Weston Medical Center will terminate immediately due to financial exigency. As you may recall, under paragraph ten (10) of your employment contract with the Center, the employment agreement may be terminated immediately in the event of financial exigency, or for cause. As you know, the Center is currently undergoing a critical financial situation at the present time. Because of this, and your unwillingness to adhere to the agreed upon job requirements provided in your employment agreement with the Center, which has added to the financial exigency, it has become necessary to sever the Center's employment relationship with you immediately.
>
> An examination of your employment record from January 1, 2003 until July 31, 2003 reflects a serious lack of commitment on your part. Our records indicate that you saw a total of only 214 patients during this entire time. This averages to only 2.93 patients a day, resulting in a serious drop in revenue. In fact, while our records reflect gross wages to you during this period of $85,723.74, you generated revenue of only $11,788,80 due to this low volume of patient encounters.

Defendants' Ex. 6.

11. On approximately August 24, 2003, Weston filed an amended Charge of Discrimination alleging age discrimination and retaliation. Defendants' Ex. 7.

12. In February 2004, Weston filed a complaint in the Court of Common Pleas for Aiken County, South Carolina, alleging that his termination was the result of retaliation, breach of contract, breach of contract accompanied by a fraudulent act, gross negligence, and bad faith. Defendants' Ex. 8.

13. On April 22, 2004, Weston requested that SCHAC release his claims and issue him a right to sue notice. Defendants' Ex. 9.

14. On April 4, 2005, while the South Carolina lawsuit was still pending, SCHAC issued Weston a right to sue notice. Defendants' Ex. 11.

15. Weston requested that the Equal Employment Opportunity Commission conduct a substantial weight review of SCHAC's decision, after which it issued a Right to Sue notice on May 31, 2005. Defendants' Ex. 12.

16. Weston did not amend his State Court complaint to add any ADEA claims. As noted above, this action was filed on August 31, 2005.

17. A jury trial was held in the State Court action on October 10-12, 2005, in the Aiken County Court of Common Pleas. At the conclusion of trial, the jury awarded Weston $200,000 actual and $300,000 in punitive damages. Defendants' Ex. 15.

## DISCUSSION

Weston alleges that he was terminated based on his age.[5] Defendants contend that they are entitled to dismissal and/or summary judgment because: (1) this Court lacks subject matter

---

[5] In his complaint, Weston also appears to allege that he was demoted from the position of Medical Director to the position of Medical Director Emeritus based on his age. He does not discuss this claim in his opposition memorandum and thus appears to have abandoned this claim. Further, there is no indication that he actually suffered an adverse employment action of demotion as there is no indication he actually became Medical Director Emeritus or had his salary reduced. In his opposition memorandum, Weston provides that he was given a letter concerning a change, but he "refused to sign the letter or except [sic] the position." Plaintiff's Opp. Mem. at 3.

jurisdiction over Weston's ADEA claim under the doctrines of collateral estoppel and res judicata,[6] and (2) Weston fails to establish a claim under the ADEA.

Defendants contend that this court lacks subject matter over Weston's claims because they are precluded under the doctrine of res judicata as the instant action relies upon the identical facts adjudicated in the state court proceeding. Weston contends that his ADEA claim is not barred by res judicata.

The doctrine of res judicata embodies two distinct preclusion concepts: (1) claim preclusion; and (2) issue preclusion. Marrese v. American Acad. of Orthopaedic Surgeons, 470 U.S. 373, 376 n. 1, (1985); Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1 (1984). Claim preclusion refers to the preclusive effect of a judgment in foreclosing litigation of matters which should have been raised in an earlier suit, while issue preclusion refers to the effect of a judgment in precluding the relitigation of a matter actually litigated and decided. Id.

Pursuant to 28 U.S.C. § 1738, state judicial proceedings shall have the same full faith and credit in every court within the United States as they have in the courts of the state from which they are taken. As a result, "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra, 465 U.S. at 81 (1984). Thus, South Carolina law of claim preclusion (also called res judicata) must be applied to determine the effect of the South Carolina judgment.

In South Carolina "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." Hilton Head Ctr.

---

[6]Preclusion is not a jurisdictional matter. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)(citing Fed.R Civ.P. 8(c)). Defendants have plead res judicata as an affirmative defense in their answer. See Doc. 5.

5

of South Carolina, Inc. v. Public Service Comm'n of South Carolina, 362 S.E.2d 176, 177 (S.C. 1987). South Carolina courts use various tests in determining whether a claim should have been raised in a prior suit: "(1) when there is identity of the subject matter in both cases; (2) where the cases involve the same primary right held by the plaintiff and one primary wrong committed by the defendant; (3) when there is the same evidence in both cases; and [] (4) when the claims arise out of the same transaction or occurrence." Plum Creek Dev. Co., Inc. v. City of Conway, 512 S.E.2d 106, 109 n. 3 (S.C. 1999)(citing J. Flanagan, South Carolina Civil Procedure 649-650 (1996)). To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit. Riedman Corp. v. Greenville Steel Structures, Inc., 419 S.E.2d 217 (S.C. 1992); Sealy v. Dodge, 347 S.E.2d 504 (S.C. 1986).

Weston contends that Defendants have not established the second and third elements (identity of the subject matter and adjudication of the issue in the former suit). Defendants, however, have established the third prong because the state court action was decided in a jury trial as noted above. Thus, the only issue remaining is whether there is identity of the subject matter.

If the primary right and duty and alleged wrong are the same in each action, there is an identity of subject matter. See Jimmy Martin Realty Group, Inc. v. Fameco Distrib., Inc., 386 S.E.2d 803 (S.C. Ct.App.1989). The state action and present action both concern Weston's August 7, 2003 termination and the events leading up to that date. Thus, there is identity of subject matter such that this action is barred under the doctrine of res judicata. See Briggs v. Newberry County School District, 989 F.2d 491, 1993 WL 66558 (4th Cir. March 11, 1993)(unpublished)(employee's federal action under 42 U.S.C. § 1983 barred by res judicata where she brought action before county school

board and appealed to the South Carolina Court of Common Pleas on basis that no good cause existed for her dismissal, but did not present any of her constitutional claims in support of her position during the state proceedings); Allen v. Greenville County, 712 F.2d 934 (4th Cir. 1983)(federal civil rights action alleging that County terminated a contract to provide janitorial services for racially discriminatory reasons was barred by res judicata because federal claim could have been raised in plaintiff's earlier state court action for breach of contract); see also O'Grady v. MCI Telecomms. Corp., 103 F.3d 119, 1996 WL 721953 (4th Cir. 1996)(finding that plaintiff's Title VII action was barred on res judicata grounds by a prior action in Virginia state court for intentional infliction of emotional distress, wrongful termination, and intentional interference with contractual relations as the state and federal actions were based on identical facts, sought the same remedies, and involved the same parties. The Fourth Circuit also noted that although plaintiff did not raise a Title VII claim in his state action and had not yet received a right to sue notice, he could have raised the issue as he was entitled to a right to sue notice under 42 U.S.C. § 2000e-5(f)(1)).[7]

Weston admits that the subject matter here is the same (Plaintiff's Opp. Mem. at 7), but cites Griggs v. Griggs, 51 S.E.2d 622 (S.C. 1949), to argue that res judicata does not bar this action. In Griggs, different facts and evidence were necessary to support the different causes of action, adverse possession and breach of deed agreement. Here, however, the breach of contract and the alleged age discrimination occurred during the same time period, involved the same actors, and allegedly both caused the same resulting termination of Weston's employment.

---

[7]Under Virginia law, four elements must be present before res judicata can be asserted to bar a subsequent proceeding: "(1) identity of the remedies sought; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality of the persons for or against whom the claim is made." Wright v. Castles, 349 S.E.2d 125, 128 (Va. 1986).

Weston also argues that he could not have raised his ADEA claim in the state action because he had not received a right to sue notice at the time he filed the state action. First, it should be noted that Weston could have raised an ADEA claim because state courts have jurisdiction over such claims. See 29 U.S.C. § 626(c)(1); Baldwin v. Sears, Roebuck & Co., 667 F.2d 458, 459-60 (5th Cir.1982); Stamm v. United Airlines, Inc., 67 F.3d 296, 1995 WL 564360 (4th Cir. 1995)[Table]. Although Weston had not yet received his right-to-sue notice at the time he brought the state action, he received such notice more than four months prior to his trial date.

The parties' positions are somewhat unclear as to the issue of collateral estoppel. In their motion to dismiss/motion for summary judgment, Defendants contend that collateral estoppel applies because the reason for Weston's termination of employment was determined in the prior proceeding and the doctrine of collateral estoppel precludes Weston from asserting a new theory of recovery to obtain a judicial judgment against the Center. Plaintiff argues that collateral estoppel does not apply because none of the elements necessary to establish his claims of age discrimination were litigated or directly determined in the prior action to warrant them necessary to support the original judgment. Later, however, Weston contends that Defendants should be precluded, under the theory of collateral estoppel, from asserting that Weston was terminated due to financial exigency because the issue has already been litigated. Plaintiff's Opp. Mem. at 15. In their reply, for the first time, Defendants argue judicial estoppel as an alternative to collateral estoppel. As the undersigned recommends that this action be dismissed based on res judicata, it is unnecessary to address these collateral estoppel arguments or consider Weston's ADEA claim on the merits.

## CONCLUSION

Based on the foregoing, it is recommended that Defendants' motion to dismiss (Doc. 19) be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 1, 2007
Columbia, South Carolina